IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM F. BENJAMIN and MARGARET BENJAMIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 05-0256-P-M |
| ROBERT T. THOMPSON, an individual and MEGA LIFE AND HEALTH INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER

Pending before the court is a Motion to Remand filed by plaintiffs William and Margarete Benjamin,[1] filed on June 30, 2005 (doc.5), and a Response in Opposition filed by defendant Mega Life and Health Insurance Company ("Mega Life"), filed on August 1, 2005 (doc.13). After careful consideration of the filings and the record as a whole, this court finds that plaintiffs' Motion to Remand is GRANTED.

Procedural History

Plaintiffs, Alabama citizens, filed this three-count tort action on January 27, 2005, in the Circuit Court of Mobile County, Alabama (*CV-05-0298.51-JRL*), against defendants Mega Life, an Oklahoma corporation, and Robert T. Thompson, an agent of Mega Life, and an Alabama citizen

---

[1] Mrs. Benjamin's name was initially misspelled in the Complaint as "Margaret" Benjamin (see doc.6- Affidavit of William F. Benjamin, dated June 29, 2005).

(doc.1, Ex.A).  Plaintiffs allege misrepresentation, suppression, and continuing fraud in connection with the purchase of medical health insurance from defendants, for which plaintiffs seek compensation and punitive damages.  Id.

On March 30, 2005, service of process was perfected upon Mega Life.  On April 29, 2005, Mega Life removed plaintiffs' action to this federal district court (doc.1).  Mega Life contends that plaintiffs have fraudulently joined resident defendant Thompson in this action for the sole purpose of defeating federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Id.[2]  On April 29, 2005, Mega Life filed its Answer (doc.3).

On June 30, 2005, plaintiffs filed the subject Motion to Remand contending that defendant Thompson has not been fraudulently joined (doc.5), with an Affidavit in support (doc.6, Ex.A), a Memorandum of Law (doc.7), and a copy of the Mega Life Certificate (a description of the coverage) (doc.9, Ex.B).

On July 27, 2005, defendant Thompson filed his Answer (doc.10).

On August 1, 2005, Mega Life filed its Response in Opposition to the subject Motion to Remand (doc.13).

Factual Background

Plaintiffs allege that they had medical insurance through "States General" (doc.1, Ex.A, ¶4-5). William Benjamin states that he

grew up in Walnut Hill, Alabama.  I left Ernest Ward High School after I completed the

---

[2]  At the time of removal, defendant Thompson had yet to be served with the Summons and Complaint. The Return of Service upon defendant Thompson, reflecting personal service on July 18, 2005, was not filed until August 1, 2005 (doc.13).

10th grade, and in 1961 began work for a logging company in Gilbert Town, Alabama. In 1964, I entered the United States Army, where I served for two years as a gunner in the 101st Infantry in Thailand. After being discharged from the Army in 1966, I worked for Baldwin Transfer until 1972, which I went to work for Teladyne Air Craft as a mechanic. In 1976, I became a mechanic at Bullard Oldsmobile in Mobile, Alabama. In 1978, I opened my own mechanic's business. I moved to a larger location in 1989, and in 1992 I opened Orange Beach Towing.

My spouse is Margarete Benjamin. We have been married since 1979. Since she began to work for Radio Holland in about 1987, our health insurance was provided through her employment. When she was laid off in 2001, we had to purchase health insurance, which we did through States General in 2001.

(doc.6-W. Benjamin Affid., ¶1-2).

In April or May, 2002, plaintiffs saw an advertisement for major medical health insurance offered by Mega Life. Plaintiffs responded to the advertisement by telephone. On June 20, 2002, Mega Life's agent defendant Thompson called on plaintiffs at their place of business to talk to them about major medical insurance. Plaintiffs told Thompson that they had medical health insurance but they were interested in major medical health insurance (doc.1, Ex.A, ¶6-8).

William Benjamin states that based on Thompson's sales presentation, they switched their medical coverage to Mega Life. Id., at ¶10; doc.6, W. Benjamin Affid., ¶3. On June 20, 2002, William Benjamin signed a "Confirmation of Presentation and Acknowledgment of Delivery and MIB Authorization[3]" as "Applicant," and defendant Thompson signed as "Representative." (doc.1, Ex.E). The Confirmation reflects, in part,

Upon my request, your representative, whose signature appears below, visited me to determine my interest in applying for insurance with your company. Your representative was courteous and fully and completely explained to me from the same certificate, all the provisions as contained in the certificate, including every benefit, exclusion, limitation, waiting period, and deductible, if any... In signing this form, I agree that I have carefully

---

[3] "MIB" stands for "Medical Information Bureau" (doc.1, Ex.E).

> examined and understand the provisions of the specimen certificate..., and that [Mega Life] is not bound by any knowledge of or statement made by or to the representative,...
>
> I understand that several deductible options are available under the plan described to me.  I further understand that the larger deductible I select, the greater my out-of-pocket expenses will be as the deductible must always be satisfied by me before [Mega Life] will pay benefits...

Id.

Thompson sold plaintiffs medical coverage under Certificate No. 903399821, effective July 24, 2002 (doc.1, Ex.B, and doc.9, hereinafter referred to as the "Certificate").  Plaintiffs allege that Thompson represented that the Certificate was Mega Life "major" medical health insurance coverage for all health related claims with a $1,000 deductible per person, per year, $20 doctor's visit co-pay, $10 prescription co-pay; it paying 80% of all medical costs with plaintiff's paying 20%.  The premium quote was $500 per month, about $100 cheaper than their States General coverage (doc.1, Ex.A, ¶9).

By letter dated July 22, 2002, Mega Life sent plaintiffs their Certificate by certified mail, (doc.1, Ex.B and D; doc.9).  The letter reflects, in part:

> We have enclosed your Coverage(s) of Insurance and ask that you read it carefully.  We want you to understand all benefits available to you and your dependents...
>
> **Based on medical information received, it was necessary for us to charge an additional premium.  To allow us to issue this coverage, we have increased your health premium to $425.25...**

(doc.1, Ex.B).  Upon receipt dated July 30, 2002 (doc.1, Ex.D), plaintiffs allege they "looked at the [Certificate]" and it did not seem to contradict Thompson's representations.  Id., at ¶11.

The Certificate reflects that coverage is provided under Group Policy No. 00385, issued to "Americans for Financial Security, Inc." (doc.9, p.3), and states, in part:

10 DAY RIGHT TO EXAMINE THE CERTIFICATE

It is important to Us that You understand and are satisfied with the coverage being provided to You.  If You are not satisfied that this coverage will meet Your insurance needs, You may return this Certificate to Us at Our administrative office..., within 10 days after You receive it.  Upon receipt, We will cancel Your coverage as of the Certificate Date, refund all premiums paid and treat the Certificate as if it were never issued.

(doc.9, p.1).

The Certificate's "DEFINITIONS" section defines several pertinent words and phrases as

follows:

**Deductible** means the amount of Covered Expenses that an Insured Person must pay for each Period of Confinement before benefits will be paid.  Deductible does not include non-Covered Expenses.  **The Deductible will be applied separately for each Period of Confinement in a Hospital or Outpatient Surgery Facility for each insured Person.**

Once this deductible has been met 3 times in a Calendar Year by any or all Insured Persons under Your Certificate, no further Deductibles must be met for the remainder of that Calendar Year for any or all insured Persons under Your Certificate.

**Covered Expenses** means Usual and Customary charges for the services, supplies, care or treatment covered under this Certificate which are incurred by an Insured Person as a result of Injury or Sickness and for which the insured Person is legally obligated to pay and are not otherwise excluded or limited herein.

**Period of Confinement** means a period which begins on the date an Insured Person is admitted to a Hospital or Outpatient Surgery Facility for the treatment of an Injury or Sickness and ends when the Insured Person completes 180 consecutive days without being Confined in a Hospital or Outpatient Surgery Facility for the same or related cause. In no event will a single Period of Confinement exceed 365 days.  A separate Period of Confinement will apply to each Injury or Sickness.

**Calendar Year** means a twelve month period which begins at 12:01 a.m. on January 1 of any year and ends at 12:00 midnight on December 31, of that year.

**Injury** means bodily harm caused by an accident resulting in unforeseen trauma requiring immediate medical attention and is not contributed to, directly or indirectly, by a Sickness. The injury must occur after the Insured Person's coverage has become effective and while the coverage is in force.

**Sickness** means an illness or disease which first manifests itself after the Insured

5

Person's coverage becomes effective and while the coverage is in force.

Id., p.5-9.  The "SCHEDULE OF BENEFITS" reflects that the deductible is $1000, and that Mega Life would pay 100% of hospital room charges, of intensive care confinement up to 90 days, of physician visits while hospitalized, and for ambulance transportation, and 80% of miscellaneous hospital inpatient charges, of "Surgeon Benefit,[4] " of outpatient surgery facility charges, and of all other covered expenses.  Id., p.3.

Plaintiffs allege that in late 2002 and early 2003, William Benjamin began experiencing medical problems, back and leg trouble.  He was treated at South Baldwin Hospital emergency services, Orthopedics Associates in Foley, Alabama, and Thomas Hospital in Fairhope, Alabama.  Id., at ¶12-13.

In late 2002, William Benjamin sold Orange Beach Towing.  Id., at ¶14.  In December, 2003, William Benjamin began experiencing breathing problems and was cared for at South Baldwin Hospital.  On December 19, 2003, William Benjamin underwent cardiac diagnostic testing and the removal of his gall bladder.  Id., at ¶15.

In January 2004, William Benjamin underwent some additional cardiac medical procedures.  Id., at ¶16-17.  On April 7, 2004, William Benjamin underwent a heart catheterization (doc.6, ¶5).  On June 8, 2004, he underwent heart surgery at Spring Hill Memorial Hospital, i.e., the implantation of a pacemaker (doc.1, Ex.A, ¶20, 23).  In September 2004, William Benjamin had additional heart related medical services.  Id., at ¶22.

Plaintiffs allege that they have incurred substantial medical bills, including a bill from Spring Hill

---

[4] The phrase "Surgeon Benefit" is not defined in the Certificate.

Memorial Hospital for approximately $35,000 which Mega Life refused to pay.  Plaintiffs allege that

Mega Life would not pay 80% of the medical bills they incurred, as they were told, and Mega Life took

the position that a $1000 deductible was owed each time plaintiff went to the hospital, rather than per

year per person.  Id., at ¶19-20.

Plaintiffs claim, against both defendants: 1) Negligent and/or wanton misrepresentation at the

time the policy was sold with an intent to cause plaintiffs' reliance thereon, and on which plaintiffs did

reasonably rely; 2) negligent and/or wanton suppression of material facts at the time the policy was sold

with an intent to cause plaintiffs' reliance without benefit of that which was suppressed, and on which

plaintiffs did reasonably rely; and 3) continuing fraud in that defendants have taken no action to consult

with plaintiffs and/or to correct any misrepresentation that Thompson made at the time of the sale of the

policy.  Plaintiffs allege that they have incurred medical expenses that have not been paid by Mega Life,

that they have paid approximately $40,000 to medical providers, they have suffered emotional distress,

mental anguish, and inconvenience, and that they do not have the "major" medical health insurance they

thought they were purchasing from defendants.  Id., at ¶25-40.

Mega Life contends that plaintiffs fraud claims against defendant Thompson are barred by the

applicable two-year statute of limitations, Ala. Code § 6-2-3, and § 6-2-38(a); that plaintiffs' reliance

on defendant Thompson's representations was not reasonable after they received their copy of the

Certificate; and that plaintiffs claims of suppression against defendant Thompson cannot be sustained in

that they received a copy of the Certificate containing all the material terms of the coverage (doc.1).

In support of Removal, Mega Life proffered a copy of Mega Life correspondence to William

Benjamin dated July 22, 2002, Id. (Ex.B); a copy of the Certificate (Ex.C); a U.S. Postal Service

Delivery Confirmation Receipt dated July 30, 2002 (Ex.D); and a Confirmation of Presentation and

Acknowledgment of Delivery and Medical Record Information Authorization signed by plaintiffs and

dated June 20, 2002 (Ex.E).

Standard For Remand

A civil case filed in state court "may be removed by the defendant to federal court if the case

could have been brought originally in federal court." Tapscott v. MS Dealer Service Corp., 77 F.3d

1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a), abrogated on other grounds by Cohen v.

Office Depot, Inc., 204 F.3d 1069 (11th Cir.), cert. denied, 531 U.S. 957 (2000). A federal court

may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds

$75,000.00, exclusive of interest and costs, and the action is between citizens of different states. §

1332(a)(1). However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal

courts are directed to construe removal statutes strictly... Indeed, all doubts about jurisdiction should

be resolved in favor of remand to state court." University of South Alabama v. American Tobacco

Co., 168 F.3d 405, 411 (11th Cir. 1999); Anderson v. Allstate Life Insurance Co., 2001 WL 228057,

*5 (S.D.Ala. (Feb. 1, 2001) (M.J. Cassady). The removing party "bears the burden of demonstrating

federal jurisdiction." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287, n.4 (11th Cir. 1998)

(citation omitted); Tapscott, 77 F.3d at 1356.

A federal district court may exercise subject matter jurisdiction over a civil action in which only

state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. See

28 U.S.C. § 1332(a)(1). In order for removal to be proper under 28 U.S.C. § 1441, there must be

complete diversity of citizenship. § 1441(b). Thus, not only must a plaintiff be a citizen of a state other

8

than the state of which one defendant is a citizen, but also, under the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant.  Fitts v. Griffin, 304 F.Supp.2d 1337 (M.D.Ala. (Feb. 9, 2004)) (Albritton, C.J.) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

Because of the complete diversity requirement, a plaintiff may attempt to prevent removal by joining a defendant who shares the same state citizenship as the plaintiff.  This practice of filing a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal is called "fraudulent joinder."  Fitts, 304 F.Supp.2d at 1337 (citing Tedder v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir. 1979)[5] and Thomas v. Jim Walter Homes, Inc., 918 F.Supp. 1498 (M.D.Ala. (Mar. 6, 1996)) (Albritton, J.).

Herein, it is undisputed that diversity exists between plaintiffs and Mega Life, and that the amount in controversy exceeds the minimum requisite jurisdictional amount (doc.1 compared with doc.7).  Complete diversity does not exist, however, in that plaintiffs also name Thompson, an Alabama citizen, as a defendant.  Mega Life contends that non-diverse defendant Thompson was joined fraudulently to defeat diversity jurisdiction (doc.1, p.2; doc.13).  Plaintiffs argue otherwise (doc.7).

In Tillman v. R.J. Reynolds Tobacco, et al., 253 F.3d 1302 (11th Cir. 2001), the Court opined as follows:

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought.  28 U.S.C. § 1441(b).  Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant

---

[5]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant.  See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11ᵗʰ Cir. 1998).  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11ᵗʰ Cir. 1983), superceded by statute on other grounds as stated in Wilson v. General Motors Corp., 888 F.2d 779 (11ᵗʰ Cir. 1989).  "The plaintiff need not have a winning case against the alleged fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate."  Triggs, 154.3d at 1287 (emphasis in original).

Id., at 1305.

Fraudulent joinder "is a judicially created doctrine that provides an exception to the requirement

of complete diversity."  Triggs, 154 F.3d at 1287.  It has been identified in three separate situations.

The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.  Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11ᵗʰ Cir. 1983), superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11ᵗʰ Cir. 1993).  The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.  Coker, 709 F.2d at 1440.  In Tapscott, 77 F.3d at 1355..., a third situation of fraudulent joinder was identified - i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

Id.

Herein, it is the first type of fraudulent joinder which serves as the basis of Mega Life's removal

(see docs.1, 13).  As to this first type, the Eleventh Circuit has stated:

"If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  (Citation omitted).  The plaintiff[s] need not have a winning case against the allegedly fraudulent defendant; *[he] need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate*.

Id. (emphasis added); Wright v. Metropolitan Life Ins. Co., 74 F.Supp.2d 1150, 1152-53 (N.D. Ala.

(Nov. 23, 1999)) (Thompson, J.).

10

The removing defendant's burden of establishing fraudulent joinder "is a heavy one." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11ᵗʰ Cir. 1998). The defendant's showing that there is no possibility that a plaintiff can recover under state law, must be established by clear and convincing evidence. Brackett v. Provident Life & Accident Ins. Co., CA 98-0288-P-S, *2 (S.D.Ala. (Jun. 19, 1998)) ("defendant must allege its fraudulent joinder claim with particularity and support its assertion with clear and convincing evidence."); Lane v. Champion Int'l Corp., 827 F.Supp. 701, 710 (S.D.Ala. (Jun. 14, 1993)) (Vollmer, J.) (citing Parks v. New York Times Co., 308 F.2d 474, 478 (5ᵗʰ Cir. 1962), cert. denied, 376 U.S. 949 (1964)).

Further, "the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties..." Pacheco de Perez, 139 F.3d at 1380 (citations omitted) (emphasis added); see also Crowe v. Coleman, 113 F.3d 1536, 1538 (11ᵗʰ Cir. 1997). In Crowe, the Eleventh Circuit cautioned,

> While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b), ..., the jurisdictional inquiry must not subsume substantive determination... Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.

Crowe, at 1538 (citations and quotation marks omitted); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 548-49 (5ᵗʰ Cir. Unit A 1981).

> In terms of this circuit's law, the main point for us is this one: For... Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: *after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving*

11

*all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law __might__ impose liability on the facts involved."*... Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

Crowe, at 1541-42 (emphasis added); Wright, 74 F.Supp.2d at 1153.

Mega Life contends that plaintiffs' claims against non-diverse defendant Thompson are time-barred, subject to the statute of limitations, and that plaintiffs' argument that they reasonably relied upon the misrepresentations and suppressions of Thompson are precluded by the fact that plaintiffs received the documentation which should have put them on notice of the terms of the Mega Life medical coverage[6] (docs.1, 13).

In order to prevail on fraud claims, plaintiffs "must establish (1) that [Thompson] made a false representation, (2) that the misrepresentation involved a material fact, (3) that [plaintiffs] relied on the misrepresentation, and (4) that the misrepresentation damaged [plaintiffs]." Baker v. Metropolitan Life Ins. Co., ___ So.2d ___, 2005 WL 78774 (Ala. 2005).

Plaintiffs fraud claims are subject to a two-year statute of limitations. § 6-2-38(l)[7]; Potter v.

_____

[6] Ala. Code § 6-5-101 provides that "[m]isrepresentation of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently acted on by the opposite party, constitute legal fraud." Ala. Code 6-5-102 states that "suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."

[7] Ala. Code § 6-2-38(l) provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." The limitation is subject to the "savings clause," which provides that "actions seeking relief on the ground of fraud where the statute

First Real Estate Company, Inc., 844 So.2d 540, 545 (Ala. 2002); Ex parte Seabol, 782 So.2d 212,

216 (Ala. 2000), however, the statute of limitations

"...is subject to the 'saving clause' provided by § 6-2-3:

> "'In actions seeking relief on the ground of fraud where the
> statute has created a bar, the claim must not be considered as having
> accrued until the discovery by the aggrieved party of the fact constituting
> the fraud, after which he must have two years within which to prosecute
> his action.'"

Seabol, 782 So.2d at 216.  Section 6-2-3 supplies an objective test, tolling the statute of
limitations on a fraud claim until the aggrieved party discovers or, in the exercise of
reasonable care, should have discovered, the facts constituting the fraud.  Seabol, 782
So.2d at 216; Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997); Moulder v.
Chambers, 390 So.2d 1044, 1046 (Ala. 1980).

* * *

[The Alabama Supreme Court] reaffirmed that the "reasonable-reliance"
standard is the test for determining when an aggrieved person should have discovered the
facts constituting the fraud.  Foremost, 693 So.2d at 421.  "'The question of when a party
discovered or should have discovered the fraud is generally one for the jury.'"  Seabol,
782 So.2d at 216, quoting Liberty Nat'l Life Ins. Co. v. Parker, 703 So.2d 307, 308 (Ala.
1997).  However, under the reasonable-reliance standard,

> "The trial court can enter a judgment as a matter of law in a fraud case
> where the undisputed evidence indicates that the party or parties claiming
> fraud in a particular transaction were fully capable of reading and
> understanding their documents, but nonetheless made a deliberate
> decision to ignore written contract terms."

Foremost, 693 So.2d at 421. [In Foremost] [t]his Court held that "the plaintiffs received
documents when they purchased their mobile homes... that if read or even briefly
skimmed would have put reasonable persons on notice [of the facts constituting the
fraud]."... However, the Court held that the reasonable-reliance standard would be
applied prospectively in all cases filed after March 14, 1997, the date the opinion in
Foremost was released, but would not be applied in Foremost itself.  693 So.2d at 421.
Nevertheless, the Court commented that, had it applied the reasonable-reliance standard
in that case, the plaintiffs' claims would have been barred by the statute of limitations
because they received the documents more than two years before they filed their

---

has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of
the fact constituting the fraud, after which he must have two years within which to prosecute his action." § 6-2-3;
Potter, 844 So.2d at 545; Seabol, 782 So.2d 216.

complaints alleging fraud and they testified that had they read those documents they
would have learned of the fraud.  Foremost, 693 So.2d at 422.

Potter, 844 So.2d at 545-46; see Wright, 74 F.Supp.2d at 1154 ("the Foremost decision does not call

for,... a blanket application of a two year limitations period from when the fraud allegedly occurred.").

In Wright, which this court finds applicable and persuasive, the plaintiff sued MetLife and its

agent in Montgomery County, Alabama, alleging fraudulent misrepresentation, concealment, and

negligent and wanton hiring, training, and supervision.  84 F.Supp.2d 1152.  MetLife removed the

action, under § 1332, in that their agent was a non-diverse defendant.  The plaintiff sought remand.  Id.

In Wright, the issue was whether the claims against MetLife's agent were time-barred because

the point in time in which the plaintiff discovered or should have discovered the alleged fraud was,

according to the defendants, more than two years from the filing date of the action.  74 F.Supp.2d at

1154.  The district court noted:

> Under the "reasonable reliance" standard, articulated in Foremost, the factfinder is
> afforded "*greater flexibility* in determining the issue of reliance based on all of the
> circumstances surrounding a transaction, including the mental capacity of, educational
> background, relative sophistication, and bargaining power of the parties."... And, of
> course, there is the very important factor of whether general circumstances, and in
> particular, the language in the insurance contract, put the alleged victim on notice of the
> fraud outside the limitations period.  *All* these factors have yet to be developed in this
> case, and, without their development, this court cannot conscientiously apply the Foremost
> standard here.

74 F.Supp.2d at 1154 (emphasis in original).  In resolving the issue in the plaintiff's favor, the district

court concluded that "Wright has not yet had a full opportunity to engage in discovery to prove her

claims against [the agent]...,  she should not be unjustly cut off at this early stage from pursuit of

possibly valid claims."  Id., at 1153.

Herein, plaintiffs filed this action on January 27, 2005, in the Circuit Court of Mobile County.

14

On March 30, 2005, service of process was perfected upon Mega Life.  On April 29, 2005, Mega

Life removed the action to this federal district court and filed its Answer.  On June 30, 2005, plaintiffs

filed the subject Motion to Remand.  On July 27, 2005, defendant Thompson filed an Answer, and on

August 1, 2005, Mega Life filed its Response in Opposition to the subject Motion to Remand.  This

court notes that the Rule 16(b) Scheduling Conference was set to be conducted on September 15,

2005 (see doc.11), and has been continued pending resolution of the jurisdictional issues raised herein

(doc.14).  Thus, like the Wright case, discovery is at a very early stage.

> The question then is how should the court assess factual allegations for fraudulent joinder
> when there has not been a full opportunity for discovery.  "The court need not look far
> for an appropriate threshold standard.  A party submitting a pleading must meet, at least,
> the requirements of Rule 11 of the Federal Rules of Civil Procedure."  Sellers v.
> Foremost Ins. Co., 924 F.Supp. 1116, 1118 (M.D.Ala. 1996) (Thompson, J.).

Id., at 1153.

The Rule provides, in part:

> By presenting the court... a pleading, written motion, or other paper, an attorney... is
> certifying that to the best of the person's knowledge, information, and belief, formed after
> an inquiry reasonable under the circumstances, – (3) the allegations and other factual
> contentions have evidentiary support or, if specifically so identified, are likely to have
> evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed.R.Civ.P. 11(b)(3); Wright, at 1153.  Thus, "to block a fraudulent-joinder charge based on lack of

legal support, a plaintiff need only show that [the] claim against a resident defendant is warranted by

existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or

the establishment of new law."  Id., at 1153.

In Wright, the Court opined that

> because a fraudulent-joinder charge based on statute of limitations raises a concern ...
> that is, that a plaintiff may have good reason to believe, based on the facts (as known)

15

and the law, that a limitations statute has not run but the plaintiff may need discovery to confirm the fact – Rule 11's standards should apply to such a charge. Therefore, to block a fraudulent-joinder charge based on statute of limitations, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that [their] claim against the resident defendant has an evidentiary support both in fact and in law or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Id., 1153-54.

Herein, the dispute centers on whether plaintiff's claims against non-diverse defendant Thompson are time-barred because the point in time in which plaintiffs discovered or should have discovered the alleged fraud was, according to Mega Life, more than two years beyond the date they received the Certificate. This action is at its earliest stage. The only documentary evidence available is, for the most part, the Certificate and William Benjamin's Affidavit, and the facts garnered therefrom are in dispute.

Further, although there is no evidence that plaintiffs are illerate, see Fowler v. Provident Life and Accident Ins. Co., 256 F.Supp.2d 1243, 1248 (N.D.Ala (Mar 10, 2003)) (Blackburn, J.)[8]; Potter, 844 So.2d at 547 ("a party to a contract who is illiterate can allege fraud and thereby overcome the other party's reliance on the terms expressed in the contract."), there is no evidence indicating that plaintiffs are experienced at reading and comprehending medical insurance contracts. Further, there is

---

[8] In Fowler, the plaintiff purchased a disability insurance policy in September 1992. In 1997, Fowler was deemed disabled due to depression. On June 4, 2001, Fowler's benefits were terminated. Fowler filed suit on August 26, 2002. The defendant contended that the resident-defendant insurance agent had been fraudulently joined in that Fowler's claims failed to state a claim and were time-barred. 256 F.Supp.2d at 1245.

In Fowler, the district court found that Fowler's claims failed to state a claim against the resident-defendant, and even if the claims were viable, they would have been time-barred. In so doing, the district court noted that "[p]laintiff does not allege that [she] was illiterate, or otherwise unable to read the policy. Without evidence or argument to the contrary, it is entirely reasonable to presume that plaintiff, a former real estate agent, was capable of reading the policy in 1992 when it was issued." Id., at 1248-49.

no evidence to indicate that plaintiffs are capable of reading and comprehending the Certificate, but made a deliberate decision to ignore the written terms. <u>Fowler</u>, 256 F.Supp.2d at 1248; <u>see</u> <u>Potter</u>, 844 So.2d at 546.

Mega Life contends that plaintiffs' reliance on Thompson's alleged misrepresentation and suppression was not reasonable in light of the fact that they had the Certificate. However, evidence showing that "a single clear and unambiguous document... submitted to a literate person" does not "always" trigger the running of the statute of limitations. <u>Potter</u>, 844 So.2d at 552.

In <u>Potter</u>, the issue was "whether, under the reasonable-reliance standard, evidence showing that a single clear and unambiguous document was submitted to a literate person at the time of [a real estate] closing *always* triggers the running of the statute of limitations, regardless of circumstances and events preceding the closing or events occurring at the closing." 844 So.2d at 548 (emphasis in original). The Supreme Court of Alabama decided that it did not. <u>Id</u>., at 552 ("A jury could find that the two-year statute of limitations did not begin to run when the Potters received the survey at the closing, and their claims would not be time-barred.").

Mega Life relies on <u>Baker</u>, 2005 WL 78774. In <u>Baker</u>, the plaintiff, after purchasing a whole-life insurance policy from MetLife, sued MetLife and its agent alleging various fraud claims. The defendants moved for summary judgment. The trial court granted the motion for summary judgment. <u>Id</u>., at *1. The Alabama Supreme Court affirmed, concluding that Baker had not produced substantial evidence demonstrating his reasonable reliance on MetLife's agent's alleged fraudulent actions. <u>Id</u>., at *4. However, this court finds <u>Baker</u>, distinguishable insofar as the Court's analysis was on the merits of the plaintiff's claims in the context of summary judgment, and not in the context of remand.

Herein, there has been no evidence presented indicating when plaintiffs actually discovered or should have discovered that the Certificate was, as alleged, inconsistent with the representations made by defendant Thompson.  Mega Life contends that plaintiffs were put on notice when they received the Certificate.  However, the scant evidence available reflects that plaintiffs received their copy of the Certificate on July 22, 2002.  Mr. Benjamin did not commence his pertinent medical problems until "late 2002," with his most medically consumed year, being 2004.  There is no evidence showing when plaintiffs actually became aware that the medical insurance through Mega Life was not providing the coverage they expected allegedly by way of defendant Thompson's misrepresentation and suppression.

As such, at this early stage of the proceedings, after drawing all reasonable inferences from the available record in plaintiffs' favor and resolving all contested issues of fact in favor of the plaintiffs, Crowe, 113 F.3d at 1541; Wright, 74 F.Supp.2d at 1153, this court finds that a jury could find that plaintiffs' reliance on the alleged misrepresentations of defendant Thompson was not necessarily unreasonable and that plaintiffs' fraud claims against defendant Thompson are not necessarily time-barred.  Wright, 84 F.Supp.2d at 1153; Potter, 844 So.2d at 552.

Insofar as this court has found, without speculating on the merits of plaintiffs' ultimate chance of success on their claims, that Mega Life has failed to establish that there is no possibility that plaintiffs can prove a cause of action against non-diverse defendant Thompson, this court concludes that defendant Thompson was not fraudulently joined.  Because the parties to this action are not completely diverse, federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332 is lacking.  This action is due to be remanded.

Accordingly, for the reasons set forth herein, it is ORDERED that plaintiffs' Motion to Remand

(doc.5) be and is hereby GRANTED.  This action is hereby REMANDED to the Circuit Court of

Mobile County, Alabama, from whence it came.  The Clerk, upon the lapse of the appropriate 10-day

objection period, shall effectuate remand.

       DONE this 19th day of September, 2005.


                        S/Virgil Pittman
                        SENIOR UNITED STATES DISTRICT JUDGE